NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3281
_____

UNITED STATES OF AMERICA

v.

THOMAS BRADLEY,
                                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-17-cr-00435-001)
District Judge: Honorable Jan E. DuBois
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on November 13, 2019

Before: JORDAN, SCIRICA, and RENDELL, *Circuit Judges*

(Filed: December 23, 2019)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SCIRICA, *Circuit Judge*

Thomas Bradley appeals a judgment of conviction and sentence for possession of a firearm by a convicted felon under 18 U.S.C. § 922(g). Bradley contends the jury did not have sufficient evidence to find him guilty beyond a reasonable doubt because his guilt was just as plausible as his innocence. He also disputes the credibility and plausibility of the testimony of officers present at his arrest. Because we agree with the trial court that the jury could rationally conclude that the evidence taken in the light most favorable to the prosecution supported a finding of guilt, we will affirm.

**I.**

On a November night around 10:00 p.m., two Temple University Police Department officers, Darnell Ross and Brigdon Odhner, were on patrol in Philadelphia when they heard two gunshots. After issuing a radio call about the gunshots and their location, the officers proceeded to the 2200 block of North Camac Street. Both officers later recalled seeing a person in an alley—Officer Ross saw a man wearing a black mask and hoodie, while Officer Odhner could only make out "a dark figure standing." App'x 399. They stopped the car, and Officer Odhner asked the man to come and talk to them. Instead, the man took flight, and as he ran away, Officer Ross observed the man reach into his waistband and throw away a black "L-shaped object." App'x 276.

Officers Ross and Odhner gave pursuit, with Officer Ross radioing out a description of a masked man in a black hoodie and blue jeans. The suspect made three left turns as he ran from the police—he ran out of the alley, then turned left down

Susquehanna Avenue, left on 12th Street, and left again into the alley, circling back to where he started. As the suspect fled, Officer Ross was hot on his heels, "[m]aybe about two steps . . . exactly right behind him." App'x 291. Officer Odhner, who was behind Officer Ross, observed that the suspect discarded his mask on Susquehanna Avenue as well as a backpack and a glove on 12th Street. When the suspect made his final left turn back into the alley, Officer Ross lost sight of him.

Rather than proceed alone down the dimly lit alley, Officer Ross waited for his partner to catch up so that they could proceed together. Once Officer Odhner arrived, the two drew their weapons, turned on their flashlights, and began to search for the suspect in the alley—an overgrown, undeveloped lot between two buildings that was littered with furniture, cinder blocks, and other debris. It was silent, leading Officer Ross to believe no one else was in the area. The officers soon found another glove matching the one left on 12th Street, and then they found Thomas Bradley: he was behind a wall, lying "underneath some grass, trying to blend in with the darkness of the night." App'x 293.

Although Officer Ross told Bradley to keep his hands in plain sight and stand up, Bradley did not respond until the officers warned him that they would use a taser on him. Bradley complied, and the officers helped him climb back over the wall. He was wearing a black hoodie and blue jeans , and "was out of breath and very sweaty." App'x 299. Once detained, Bradley told the officers that they had saved his life and that he was the victim of a robbery. But when asked about the robbery—what the robber looked like, where he went, how it happened—Bradley did not answer and provided no details. All

3

told, the entire encounter, stretching from the police's first sighting of the man on the street to finding Bradley in the alley, took only a few minutes.

Back at the office, Sergeant Kamari Boone of the Temple University Police Department was closing out his shift when he received the call from Officer Ross. Together with another officer, he drove to the corner of 12th and Susquehanna, where they heard a commotion in the alley. As they approached, Sergeant Boone saw that Officers Ross and Odhner had found someone and were in the process of apprehending him. According to Sergeant Boone, a man was lying in the grass "on the inside of someone's domain." App'x 456.

Meanwhile, Philadelphia Police Department Officer Omair Chughtai also heard the gunshots while sitting in his patrol vehicle about three blocks away. As he drove to the scene, Officer Chughtai heard Officer Ross's radio call about the gunshots and the ongoing pursuit of a suspect on foot in "[a] black hoodie and black jeans." App'x 365.[1] When Officer Chughtai arrived, he surveyed the area and discovered a firearm in the grass at the front of the alley. Other evidence relating to the suspect's flight was collected when Officer Odhner retraced his steps and recovered the glove in the alley, the glove and the backpack on 12th Street, and the mask on Susquehanna Avenue. Officer Odhner placed the mask and gloves inside the backpack. He was not wearing gloves when he did

[1] Officer Chughtai's recollection that the suspect was wearing black jeans appears to be inconsistent with Officer Ross's memory of what he radioed. *Compare* App'x 365 *with* App'x 285.

4

so. This evidence was photographed but was never submitted for DNA testing or fingerprinting.

Sometime later, Officers Ross and Odhner returned to the scene of the encounter, where they found at least one shell casing on the scene. The shell casings appear to have been discarded, though the officers disagree on why that happened. These irregularities would be raised at trial, and Bradley presented the testimony of an expert in the field of criminal investigations who opined that a proper forensic investigation would have been able to obtain multiple forms of evidence, such as DNA evidence from the firearm, the gloves, and the backpack.

Because he had previously been convicted of a felony offense in Pennsylvania, Bradley was charged with unlawful possession of a firearm. He was first prosecuted in state court, but after his state trial resulted in a hung jury, a grand jury sitting in the Eastern District of Pennsylvania indicted him for the federal offense under 18 U.S.C. § 922(g)(1). As before, Bradley pleaded not guilty, and the case went to trial. At the close of the prosecution's case, he made a motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, arguing that there was insufficient evidence to convict him of the crime. The trial court denied the motion, finding that there was "sufficient evidence to warrant submission" to the jury because officers had seen the suspect flee and drop the gun and then found Bradley in the immediate vicinity. App'x 494. Bradley renewed his Rule 29 motion at the close of his case, which was also denied. The jury found him guilty and he was sentenced to 48 months' imprisonment.

Bradley appeals, arguing that the trial court erred in finding that there was sufficient evidence to submit his case to the jury and that there was insufficient evidence to support his conviction.

## II.

We review a challenge to the sufficiency of the evidence *de novo*, *United States v. Freeman*, 763 F.3d 322, 343 (3d Cir. 2014), and evaluate the record "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (internal marks and citations omitted). A jury's verdict must be upheld unless it falls below the threshold of "bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

Bradley contends his conviction and sentence must be reversed for principally two reasons. First, he argues his innocence was "equally supported by the evidence" because the circumstances of his arrest are consistent with his claim of having been the victim of a robbery. Second, he makes several objections about the credibility and plausibility of the testimony and evidence offered against him, arguing, for example, that the officers may have inconsistent memories of the night in question or may have improperly handled, concealed, or investigated certain evidence, such as DNA evidence or fingerprints. But questions about what inferences can be made from the evidence, or what weight or credibility should be accorded to that evidence, are for the jury to decide. *See, e.g.*, *Caraballo-Rodriguez*, 726 F.3d at 432; *United States v. Brodie*, 403 F.3d 123, 133 (3d

6

Cir. 2005) ("Courts must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury."). For that reason, we review whether the evidence could rationally support a guilty verdict, and leave the ultimate resolution of factual disputes to the jury.

With that in mind, we agree with the trial court that there was sufficient evidence to submit Bradley's case to the jury. Jurors heard evidence that a masked man in a dark alley fled the police while discarding clothing and a firearm. The police briefly lost sight of this man as he circled back into the alley, and shortly after they found Bradley, sweaty and out of breath, hiding in the grass. When found, Bradley did not respond to the police's initial requests to stand up, and only responded after being warned by the police that they would deploy a taser. Although the police may have briefly lost sight of the suspect, the jury was presented with strong circumstantial evidence that Bradley was the man who dropped the gun and was therefore guilty of the charged offense. This evidence could support a guilty verdict that is not "so insupportable as to fall below the threshold of bare rationality." *Johnson*, 566 U.S. at 656; *see also Caraballo-Rodriguez*, 726 F.3d at 432 ("Unless the jury's conclusion is irrational, it must be upheld."). Further, we will not disturb the jury's verdict.

### III.

The trial court did not err in submitting the case to the jury, and the jury could rationally have found the defendant guilty. For the foregoing reasons, we will affirm the judgment of the trial court.